UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ANGELA BARNES,

        Petitioner,

        v.

WILLIAM HAUCK, et al.,

        Respondents.

_____

Civil Action No. 12-2705 (RMB)

**OPINION**

**BUMB, District Judge:**

This matter comes before the Court upon Petitioner's petition ("Petition") seeking a writ of habeas corpus pursuant to § 2254, see Docket Entry No. 1, and Respondents' answer opposing the Petition.[1] See Docket Entry No. 8. For the reasons detailed below, the Petition will be denied, and no certificate of appealability will issue.

Petitioner was either a resident or a frequent visitor of the Clement T. Branch Village housing project in Camden, New Jersey ("Village"). On November 6, 2006, she was spending time in the company of Pauline Houston, Claudius Hughes and Tracy Meredith ("Meredith"); the four were smoking crack cocaine in one of the Village's apartments. At one point, an argument started

---

[1] Petitioner was granted in forma pauperis status and duly notified of her Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), rights by Honorable Robert B. Kugler, the District Judge to whom this matter was initially assigned. See Docket Entry No. 2. Following Respondents' filing of their answer, this matter was reassigned to the undersigned. See Docket Entry No. 16.

between Petitioner and Meredith and transformed into a physical altercation during which Meredith started chocking Petitioner. The argument, however, swiftly subsided. Shortly thereafter, Linda Barnes ("Barnes") and Ralph Newman ("Newman") joined the four. At that point, Petitioner left the apartment promising to return with "something" for Meredith and threatening Barnes and Newman. She returned a few moments later with a knife and stabbed Meredith numerously in the chest, causing Meredith's death. See generally, Docket Entries Nos. 13-8 and 13-9.

Petitioner was indicted on the charges of murder, possession of a weapon for an unlawful purpose and terroristic threats. See Docket Entry No. 12-3. She accepted a plea offer and pled guilty to the murder charge which, right at the commencement of her plea hearing, was downscaled to aggravated manslaughter upon the last-minute bargain struck by Petitioner's counsel. See Docket Entry No. 13-20. Therefore, the new plea agreement (based on aggravated manslaughter) was read by the prosecutor into the record, and it followed by an exchange between Petitioner and the trial judge:

| | |
|---|---|
| The Judge: | I understand that you're before the Court . . . to plead guilty; is it true? |
| Petitioner: | Yes. |
| The Judge: | The charge would [now] be to . . . aggravated manslaughter. Is that your understanding? |
| Petitioner: | Yes. |
| The Judge: | And by pleading guilty, you are giving up [all your relevant] constitutional rights [including your right] to confront and cross[-]examine the State's witnesses against |

| | |
|---|---|
| | you, and to present any defense that you may have . . . . Do you understand that . . . ? |
| Petitioner: | Yes. |
| The Judge: | You've been represented by [your defense counsel].  Have you been fully satisfied with the legal advice and services that he has provided for you? |
| Petitioner: | Yes. |
| The Judge: | Are you pleading guilty voluntarily and of your own free will? |
| Petitioner: | Yes. |
| The Judge: | Are you doing so because you are in fact guilty off this offense? . . . |
| Petitioner: | Yes. |
| . . . | |
| The Judge: | Had anyone threatened or forced you in any way to plead guilty? |
| Petitioner: | No. |
| The Judge: | Ma'am, do you understand that if I find today that your guilty plea is voluntary, and then you come back to Court later and contend that it was not voluntary, . . . I'm not likely to believe that? . . . |
| Petitioner: | Yes. |
| . . . | |
| The Judge: | All right.  Ma'am, are you today under the influence of any drug, alcohol, medication or anything else that would interfere with your judgment? |
| Petitioner: | No. |
| The Judge: | Were you present in [c]ourt a moment ago when the [p]rosecutor read the proposed plea agreement into the record? . . . |
| Petitioner: | Yes. |
| The Court: | Did you hear and understand everything that was said? |
| Petitioner: | Yes. |
| The Judge: | Now, on the table before you, you have a three page plea form . . . and also the NERA . . . form . . . .  Ma'am, did you understand the questions in this form and provide truthful answers? |
| Petitioner: | Yes. |
| . . . | |
| The Judge: | Did your attorney answer all your questions to your satisfaction? |
| Petitioner: | Yes. |

3

| | |
|---|---|
| The Judge: | After those forms were completed but before deciding to plead guilty, did you review those forms, item by item, carefully with your attorney? |
| Petitioner: | Yes. |
| . . . | |
| The Judge: | Now, Ma'am, the plea agreement . . . is . . . in exchange for your guilty plea[, and] the State will recommend that you serve a period . . . between 15 and 18 years. . . . The [p]rosecutor's going to ask for 18 years, and your attorney's going to ask for 15 years. And it will be [only] anywhere in that range[,] from 15 to 18 [so, neither the prosecutor nor your attorney can ask for a term outside this range]. Additionally, . . . you [would] have to serve 85 percent of that time without eligibility for parole [under the NERA] . . . . Is that your understanding of the complete plea agreement in this case? |
| Petitioner: | Yes. |
| The Judge: | Now, under the statute, . . . for this amended charge [of aggravated manslaughter], you would face up to 30 years in . . . prison . . . . Do you understand that? |
| Petitioner: | Yes. |
| The Judge: | [You should keep in mind that the] Court is not bound by any promises . . . and has the right . . . to impose a more severe sentence [than the 15 to 18-year term, i.e., the Court can sentence you to a term of more than 18 years]. Do you understand that? |
| Petitioner: | Yes. |
| . . . | |
| The Judge: | All right. Ma'am, has anybody promised you anything else, or mentioned anything else to you to get you to plead guilty that is different from what I have said? |
| Petitioner: | No. |
| The Judge: | All right. . . . I find from your statements under oath that your guilty plea . . . is knowing and voluntary. |

Id. at 3-11.

On April 11, 2008, Petitioner was sentenced to a 17-year term, subject to parole ineligibility under the "No Early Release Act" ("NERA"), N.J. Stat. Ann. 2C:43-7.2. The trial judge selected this prison term upon being convinced as to one of many mitigating factors her counsel asserted (i.e., the judge agreed with Petitioner's counsel's argument that Meredith's "conduct induced" Petitioner's offense) and upon being convinced as to three of many aggravating factors the prosecutor pointed at (i.e., the judge agreed with the prosecutor's position stressing Petitioner's prior serious offenses and need for a meaningful deterrence to prevent or limit the risk of Petitioner's committing another offence). Docket Entry No. 13-15, at 2-3.

Petitioner did not seek direct appellate review; rather, she filed an application seeking post-conviction relief ("PCR"). The Law Division held oral argument (without having an evidentiary hearing) and denied relief on procedural and substantive grounds. See id. at 4. The Appellate Division affirmed denial of PCR, and the Supreme Court of New Jersey denied certification. See Docket Entries Nos. 13-15 and 13-19.

The Petition at bar followed, raising four Grounds. See Docket Entry No. 1, at 5-7. Not a single statement made in these Grounds denied that Petitioner stabbed Meredith to death. See id. Rather, Petitioner: (a) challenged the pre-plea events and

5

the sentence imposed; and (b) attempted to correlate some of these challenges to the performance of her counsel.

Specifically, in her Ground One, she asserted that, during the pre-plea stage, her "counsel did not file a motion to suppress her statement to the police" (i.e., the statement in which she confessed to stabbing Meredith). See id. at 5-6.

Her Ground Three paraphrased the same claim by alleging that she "has not been made aware that she had a right to have a suppression motion filed . . . . If she had been made aware of that right, [she] would have insisted [that] her attorney file[d] [such a] motion. [Then, presuming] that [such] motion [would be] granted, [P]etitioner [believes that she] would have been in a better position during [her] plea bargain negotiation and [might have struck a better deal or, in alternative, she would have been] in a better position . . . had [she] decided to hold the State to its proof by taking the case to trial." Id. at 6-7.

Her Ground Four added another angle to the same, since it asserted that her attorney violated her rights by not investigating and preparing a "defense" on the basis of the stipulated-by-both-sides fact that she was "high on drugs at the time of the offense." To that end, Petitioner opined that, had her counsel "made [an] effort to prepare an intoxication defense to the original charge of murder[,] . . . [it] would have enabled [P]etitioner to make an informed and intelligent decision about

6

whether to accept a plea offer [or, alternatively, it might have] strengthened [her] defense had she decided to take the case to trial." Id. at 7.

Finally, in her Ground Two, Petitioner asserted that her counsel argued "in favor of all applicable mitigating factors" with what she deemed an insufficient degree of ardor. From that perception, Petitioner deduced that her counsel violated her rights by succeeding to convince her trial judge with regard to only one mitigating factor. Id. at 6. In conjunction with that claim, Petitioner noted her belief that her counsel should have made additional statements, such as asserting that: (a) since Petitioner already succeeded at causing Meredith's death, her violence against Meredith was "unlikely to recur"; (b) Meredith's conduct induced her offense; and (c) she cooperated with police when she made the statement confessing to the crime she committed and called "911" after stabbing Meredith.

Finally, she alleged that her counsel violated her rights by not asking the trial court to impose a prison term below the negotiated-in-the-plea range of "15 to 18 years." Id.

Respondents opposed Petitioner's habeas application on substantive grounds and, in addition, on the grounds of procedural default (asserting that this Court should dismiss Petitioner's Grounds since these claims should have been raised

7

in state fora on direct appeal rather than during her PCR proceedings).

While Respondents' argument is wide-ranging and indicates a substantial effort and investment of time on Respondents' part, see generally, Docket Entry No. 13 (Respondents' 60-page brief), the bulk of Respondents' substantive considerations are unnecessary for disposition of this matter (since Petitioner plead guilty), and their procedural position is misplaced.[2]

A plea is valid so long as it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See North Carolina v. Alford, 400 U.S. 25, 31 (1970). Therefore, a conviction resulting from a knowing and voluntary plea of guilty by a defendant advised by competent counsel is, generally, not subject to a collateral attack. See United States v. Broce, 488 U.S. 563, 574 (1989); Mabry v.

---

[2] The issue of procedural default for the purposes of state law analysis qualitatively differs from that under § 2254. "Once a litigant fully exhausts a claim in state courts *on the merits*, that claim cannot be procedurally defaulted for the purposes of federal habeas review, this is so regardless of whether or not it was [also] procedurally dismissed . . . during . . . state proceedings." Mustaffa v. Ricci, 2011 U.S. Dist. LEXIS 44940, at *9 (D.N.J. Apr. 25, 2011) (emphasis supplied), certif. denied sub nom Thomas v. Ricci, 2011 U.S. App. LEXIS 26157 (3d Cir. Aug. 17, 2011); see also Williams v. Ricci, 2011 U.S. Dist. LEXIS 51959, at *8-9 (D.N.J. May 13, 2011) ("Since . . . the Appellate Division did dismiss Petitioner's challenges on *the merits* (and, alternatively, as procedurally defaulted), Respondents' procedural default argument is facially inapposite to the case at bar simply because the state court's determination on the  merits was entered" during the PCR process) (emphasis in original).

8

Johnson, 467 U.S. 504, 508 (1984); Tollett v. Henderson, 411 U.S. 258, 267 (1973) (when a defendant has unconditionally pled guilty, "he may . . . only attack the voluntary and intelligent character of the guilty plea"). Hence, a defendant who pleads guilty waives all his pre-plea/plea-unrelated claims; therefore, his § 2254 petition *must* be limited to an attack on his plea and/or on the assistance of his counsel provided *in connection with that plea*. See Broce, 488 U.S. at 569; Mabry, 467 U.S. at 508-09; see also Hill v. Lockhart, 474 U.S. 52, 58 (1985).

Moreover, habeas challenges to counsel's assistance warrant relief only if the defendant satisfies the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Under the first prong, he must demonstrate that his counsel's performance fell below an objective standard of reasonableness, see id. at 688; under the second prong, he must establish prejudice caused by his counsel's deficient performance. See id. at 692-93; see also Knowles v. Mirzayance, 556 U.S. 111 (2009). Generally, the latter means that the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, within the context of a defendant's attack on his plea based on his counsel's assistance, the prejudice inquiry is more exacting since it "focuses on whether counsel's constitutionally ineffective performance

9

affected the outcome of the plea process. . . . [Therefore,] the defendant must show that there is a reasonable probability that, but for counsel's errors, he would *not* have pleaded guilty and would have *insisted* on going to trial." Hill, 474 U.S. at 58-59 (1985) (emphasis supplied); United States v. Orocio, 645 F.3d 630, 638 (3d Cir. 2011). Important here, where the defendant does *not* deny his involvement in the crimes charged and pled guilty to, his "failure to disavow those charges supports the Government's contention that he would have been convicted had the case gone to trial," and no prejudice ensued from his plea. Cedeno v. United States, 455 F. App'x 241, 245 (3d Cir. 2011) (citing Premo v. Moore, 131 S. Ct. 733, 745 (2011), for the observation that a defendant's failure to deny involvement in the underlying crime counsels against a finding of prejudice).[3]

In light of these core principles, the Petition fails to state either a cognizable habeas claim or a claim warranting habeas relief. For instance, since Petitioner's Ground One challenges the pre-plea stage of her criminal proceeding (by asserting that her counsel should have sought suppression of her confession to police), that Ground falls outside the scope of §

---

[3] The court may "consider the prejudice prong before examining the performance of counsel prong." United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008) (citation omitted).

2254 review being unconnected to Petitioner's plea.  Thus, this Ground One is subject to dismissal.

Petitioner's Ground Three is deficient, in part, for the same reason as her Ground One: to the extent Petitioner claims that, had she known that a suppression motion was theoretically available to her, she would have insisted on her attorney's filing such a motion pre-plea.  Since Petitioner attacks the pre-plea stage of her criminal proceeding, that claim falls outside § 2254 review and is subject to dismissal.  The remainder of Petitioner's Ground Three (i.e., the part attempting to correlate her plea to her counsel's election not to file a motion to suppress) is substantively without merit.  This is so because she merely offers this Court her self-serving hypothesis that she might have received a better plea offer had such hypothetical motion were made and granted, accord Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 731(1973) (legal "adjudication cannot rest on any such 'house that Jack built' foundation"), without making the required two-part "showing" that she would have: (a) *insisted* on proceeding to trial; and, in addition (b) fared *better* after such trial.[4]  See Premo, 131 S.

---

[4] Petitioner conceded that she would not have insisted on proceeding to trial by outright stating that, had she obtained a hypothetical grant of her suppression motion, she would still use this hypothetical benefit to forge a plea deal.  Moreover, since her Petition does not deny the crime she committed, this Court is prompted to conclude that she would have been found guilty after

11

Ct. at 745; Hill, 474 U.S. at 58-59; Orocio, 645 F.3d at 638; Cedeno, 455 F. App'x at 245.

In addition, contrary to Petitioner's assertion that she was "unaware" of her right to file a suppression motion at the time she pled guilty, the plea colloquy verifies that she was *advised* by her trial judge that she was giving up her constitutional right to raise any challenges to State's witnesses (e.g., police officers who would testify to her confession) and to raise all defenses available to me (e.g., her now-minted position that her confession should have been inadmissible). Thus, her plea-related waiver of all these rights was both knowing and intelligent. See Iowa v. Tovar, 541 U.S. 77, 92 (2004)("[T]he law ordinarily considers a waiver knowing [and] intelligent [if the defendant is advised as to how the right] would likely apply in general . . . – even though the defendant may not know the specific detailed consequences . . . . If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum"); see also United States v. Peppers,

---

that trial. And, since the statement made by her trial judge indicates that she might have been sentenced to a thirty-year term after the trial, Petitioner failed to establish prejudice. Finally, even factoring out Petitioner's plea, the other evidence against her was so overwhelming that no prejudice could be found. See Saranchak v. Beard, 616 F.3d 292, 306 (3d Cir. 2010).

302 F.3d 120, 135 (3d Cir. 2002) (A defendant's "waiver must be made with apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses [i.e., the defendant must be aware of the] facts essential to a *broad* understanding of the whole matter") (emphasis supplied), cert. denied, 537 U.S. 1062 (2002); accord United States v. Thomas, 357 F.3d 357, 364 (3d Cir. 2004) (the courts agree as to the general range of broad "factors that courts *might* discuss, [but these factors are] not a mandatory checklist of required topics") (emphasis supplied). In light of the foregoing, no aspect of Petitioner's Ground Three merits habeas relief.

Petitioner's Ground Four is deficient for the same reasons. To the extent Petitioner challenges her counsel's lack of interest in preparing, pre-plea, what she defines as an "intoxication defense," that claim is deficient for failure to relate to her plea. This is so because: (a) an "intoxication defense" is not a "defense" under the state law to manslaughter, State v. Warren, 104 N.J. 571, 575 (1986); Mustaffa v. Ricci, 2011 U.S. Dist. LEXIS 44940, at *23-24 (D.N.J. Apr. 25, 2011)(explaining that "diminished capacity" is not a true defense but a measure employed for the purposes of reducing a murder charge to that of aggravated manslaughter)(citing State v. Pitts, 116 N.J. 580 (1989)); and (b) Petitioner's counsel, in fact, duly

13

pursued and succeeded at capitalizing on this very aspect when, at the eleventh hour, he struck the deal to reduce Petitioner's charge from murder to aggravated manslaughter.

Furthermore, Petitioner's Ground Four, identically to her Ground Three, neither asserts Petitioner's innocence nor claims that she would have insisted on proceeding to trial.[5] Since the foregoing counsels this Court to conclude that Petitioner would have been convicted at trial and faced a steeper sentence, she failed to establish prejudice. Thus, her Ground Four warrants no habeas relief.

Finally, Petitioner's Ground Two consisting of numerous sub-grounds warrants no habeas relief either. Moreover, some statements made in that Ground are of concern, since these statements suggest that Petitioner made them in bad faith. For instance, Petitioner's argument that counsel should have argued that Petitioner was not prone to violence because she had already succeeded at causing Meredith's death and could not kill Meredith all over again is specious. Likewise, had Petitioner's counsel, after striking the plea deal with the sentence range fixed

---

[5] Petitioner conceded that she would have utilized her counsel's efforts in developing what she qualifies as "defense" to seek a plea. Moreover, this Court is not entirely clear as to why Petitioner's counsel had to either "investigate" or "develop" the fact of Petitioner being under the influence of controlled substance since this fact was stipulated into the record.

14

between 15 and 18 years, argued for a term below 15 years, counsel would have breached the plea agreement.

The remainder of Petitioner's Ground Two warrants no habeas relief. The fact that her counsel succeeded at persuading the trial judge only with regard to a single mitigating factor (out of many raised) cannot render his performance a violation of her Sixth Amendment rights.[6] The record unambiguously indicates that her counsel put forward a forceful and thoughtful chain of arguments. See United States v. Soto, 159 F. Supp. 2d 39, 43 (E.D. Pa. 2001) ("[T]he mere fact that [counsel's] tactic might in retrospect appear unsuccessful does not necessarily indicate that it was unreasonable") (citing Strickland, 466 U.S. at 689); accord Shah v. United States, 878 F.2d 1156, 1161 (9th Cir.) ("[petitioner's] mere conclusory allegations are insufficient to prove that counsel was ineffective"), cert. denied, 493 U.S. 869

---

[6] The Court notes, in passing, the incompatibility of Petitioner's position that her counsel should have strived to suppress her confession to police by asserting that it was "involuntarily" while simultaneously praising Petitioner for her "cooperation with police" by voluntarily making this confession. Although Petitioner might have preferred to have her counsel employ all means possible to allow her escape conviction or to obtain a lesser punishment, regardless of how unethical those means could have been, "[a]ll lawyers practicing in the State of New Jersey obligate themselves to abide by the Rules of Professional Conduct adopted by the Supreme Court of New Jersey," In re Telfair, 745 F. Supp. 2d 536, 563 (D.N.J. 2010) (original brackets and ellipsis omitted), and the Rules prohibit attorneys from "persist[ing] in a course of action . . . that the lawyer reasonably believes is . . . fraudulent." NJ Ct. R. Prof. Conduct 1.16(b) http://www.judiciary.state.nj.us/rules/apprpc.htm#x1dot1.

(1989); cf. Smith v. Cathel, 2006 U.S. Dist. LEXIS 57287, at *18 (D.N.J. Aug. 15, 2006) ("Petitioner's disappointment that the issue was not 'hammered down' as much as Petitioner, in retrospect, would desire" states no claim warranting habeas relief).

Since the Petition, in its entirety, fails to show that the state courts' adjudication of Petitioner's claims was an unreasonable application of Supreme Court precedent, the Petition will be denied. In conjunction with this finding, the Court is obligated to determine whether a certificate of appealability ("COA") shall issue. A COA shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Here, jurists of reason would not disagree with this Court's resolution of Petitioner's claims. Accordingly, no COA will issue.

An appropriate Order accompanies this Opinion.

                                      s/Renée Marie Bumb
                                      **RENÉE MARIE BUMB**
                                      **United States District Judge**

Dated: January 30, 2014